ASHBEL GREEN, receiver of the North River Construction Company,

v.

THE WALLIS IRON WORKS et al.

A receiver of an insolvent corporation of this state, appointed by this court, compromised with the creditors of the corporation by paying them fifty per cent. in full of their claims. Among the creditors was one Lee, of New York state, who assigned, for the benefit of his creditors in New York, to one Rutan. The assignment created preferences. W., a creditor of Lee, resident in this state, obtained an order of this court permitting him to attach the rights and credits of Lee in the hands of the receiver, and afterwards made attempts to obtain garnishment. Before he effected his purpose the receiver negotiated for a compromise of Lee's claim with Rutan, the assignee. W. had notice of

Green *v.* Wallis Iron Works.

this negotiation, and did not object to it. After the compromise agreement was completed W. secured garnishment, and then applied to this court to restrain the payment of the compromise money to Rutan, it being sufficient in amount to satisfy his claim, and as well the claims of creditors applying under his attachment. The relief he asked was first denied by this court, and then was denied by the court of appeals, upon the ground that the attachment bound the funds in the hands of the receiver. Pending the appeals the receiver paid the money to Rutan, who took it to New York and distributed it according to the requirements of Lee's assignment. W. pushed his attachment in this state to judgment, prosecuted his suit to restrain the receiver's payment to Rutan, and, at the same time, presented his claim to Rutan and received a dividend upon it in part, at least, from the moneys which Rutan had from the receiver. The receiver now seek to enjoin him from enforcing his judgment in attachment.—*Held*, (1) That the assignment was void as to creditors of Lee resident in this state. (2) The receiver's agreement with Rutan was one of compromise with respect to Lee's estate, and will not be regarded in equity as a novation. (3) The money agreed to be paid in the compromise stood as Lee's money, subject to the attachment. (4) The silence of W. during the receiver's negotiation with Rutan, in view of the fact that he had the unrevoked permission of this court to attach Lee's moneys in the hands of the receiver, did not prejudice him further than to limit his right in recovery to the amount agreed to be paid in the compromise. (5) By accepting a dividend from the moneys paid by the receiver to Rutan, W. did not acquiesce in that payment or elect to recognize the assignment as valid in this state.

On motion to dissolve injunction.

*Mr. Hamilton Wallis,* for the motion.

*Mr. Theodore Runyon, contra.*

THE CHANCELLOR.

The general question here involved is whether the defendants shall be further restrained from enforcing a judgment in attachment against the complainant as garnishee.

The bill and answer present the following facts: Prior to 1884 the North River Construction Company contracted with the New York, West Shore and Buffalo Railway Company, among other things, to construct for it a railroad, with depots, engine and car-houses, and then sub-contracted with one John Lee to erect for it certain of the structures it had undertaken to

4

build.  Afterwards Lee prosecuted the work he had agreed to do, so that the construction company became largely indebted to him.  In January, 1884, the construction company was insolvent, and, on the 12th of that month, was so adjudged by this court, and the complainant was appointed receiver of its assets. Two days later he was also made like receiver by a proper court in the State of New York.  On the 18th of December, 1884, Lee, who was a resident of Brooklyn, in the State of New York, made an assignment in that state of all his property, for the benefit of his creditors, to Thomas B. Rutan, with preferences in favor of certain creditors, which preferences were lawful under the laws of New York and did not invalidate the assignment there.

In January, 1885, the Wallis Iron Works, a corporation of this state and a creditor of Lee, for the use of Charles W. Kimball, a resident of this state, to whom it had before then assigned its claim, obtained from this court permission to attach the right of Lee in the hands of the complainant, and, in February following, issued a writ of attachment, which was afterwards abandoned for some informality in its execution.  In September following it issued another attachment, which was not served, and on the 27th of the next October it caused a third writ to be issued, under which, on the 28th of the same month, the sheriff of Bergen county declared, in the presence of the complainant, that he did then and there attach the rights and credits of John Lee at the suit of the Wallis Iron Works, and thereby the complainant had garnishment.

Prior to this garnishment the complainant entered into an agreement of compromise with Rutan, whereby it was agreed that Rutan should accept fifty per cent. of his claim as assignee of Lee against the construction company, the same having been allowed by the receiver at $48,638.38, in full payment and satisfaction thereof, if notice should be given on or before October 1st, 1885, that the fifty per cent. would be paid in cash on or before January 5th, 1886.

Pending the negotiations concerning this agreement, Rutan, upon notice to the Wallis Iron Works and the other creditors of

Lee, applied to the county court of Kings county, New York, for permission to make the proposed compromise, and obtained such permission.

Afterwards, on the 26th of September, 1885, the complainant gave Rutan notice that he would pay in pursuance of the compromise.

In December, 1885, Kimball and one Elias T. Day, also a resident of this state, who had come in under the attachment as an applying creditor of Lee, filed their bill in this court to have the assignment to Rutan declared void, as against creditors of Lee residing in this state, with respect to property here, because of the preferences it gave, and sought an injunction to restrain the contemplated payment by the receiver of the North River Construction Company to Rutan, assignee. An order to show cause why the desired injunction should not issue was made by this court, which, after argument, was discharged, for the reason that the attaching creditors delayed the service of their attachment until after the compromised agreement between the receiver and Rutan had been entered into (although they had notice of its pendency through Rutan's application to the King's county court), and the receiver had given notice that he would execute it by paying the money agreed upon. The court said (*13 Stew. Eq. 403*): "The agreement between the receiver and the assignee must be regarded in equity as a novation of the debt. It was an agreement that, in consideration of the assignee's consent to accept the compromise, the receiver would pay him the amount agreed upon. Thenceforward the obligation was a substantially new one between the receiver and the assignee, the consideration of it being the compromise of the old debt, the title to which was, at the time of the compromise, in the assignee. No claim of the complainants, based on the policy of our law, can be of any avail against it now. They have waited too long. They have waited until the receiver has become liable by special agreement to pay the assignee. Before that time the liability was different. It was an obligation to pay the claim, or the dividends thereon, to the person or persons entitled thereto, and the title of the assignee might have been questioned. But now the obliga-

tion has been changed by fair and wholly legitimate means into an obligation on the part of the receiver to pay the assignee. The complainants are barred by their laches, and the receiver is, under the circumstances, entitled to the protection of the court against the garnishment."

Upon the discharge of the order to show cause Kimball and Day took an appeal. Before the appeal was determined the receiver paid the compromise fifty per cent. of the claim to the assignee, Rutan, and before the appeal was determined Rutan declared and paid a dividend from the assets in his hands as assignee to the creditors of Lee, and among them to Kimball, or the Wallis Iron Works, and Day. Afterwards the appeal was determined by the court of errors and appeals (*16 Stew. Eq. 277*), and the discharge of the order to show cause was affirmed. But the court of errors and appeals put its affirmance upon other ground than that taken by the chancellor. Mr. Justice Magie, who read the opinion of the court, said: "The conclusion of the chancellor was arrived at upon a consideration of the whole case between the parties as disclosed by the bill, the answer of the receiver and the accompanying affidavits. The questions with which he dealt are novel and of great importance. They ought not to be disposed of on such a motion, unless necessarily involved.

" Since I deem these questions not at all involved, I shall not discuss them or express any opinion upon them. The chancellor's conclusion is entirely correct on other grounds.

" When the attachment was, by permission of the court of chancery, levied on moneys in the hands of the receiver due to Lee, it bound whatever was Lee's. Thereafter the receiver could not pay any moneys due to Lee to any other person so as to exonerate him from liability under the attachment.

" The complainant's case is that Lee's assignment to Rutan is, at least as to them and other citizens of New Jersey who are Lee's creditors, utterly void. The doctrine they invoke has been enunciated by our courts of law and equity whenever the question has been mooted.

" If the complainant's contention is correct, Lee's property, in his claim against the North River Construction Company and its receiver, and the funds in the hands of the latter payable on that claim, has never been divested and is bound by the attachment. If so, the case is that of an ordinary attachment; the garnishee is liable as garnishees are liable in every attachment. I can find nothing to indicate the propriety of adding to this liability the injunction of the court of chancery, which would only subject the receiver to the additional risk of attachment for contempt."

Upon the case thus presented it is insisted that in equity the defendants should be enjoined from now enforcing their judgment in attachment against the complainant.

It is claimed, in the first place, that the agreement with Rutan and Lee, whereby Lee was to accept fifty per cent. of the claim against the construction company in full discharge of it, was in substance, and should be regarded in equity as, a novation whereby a new obligation and a new creditor were substituted, and that the attachment, coming after it had been made complete, took nothing. It is insisted that Rutan was the new creditor, and that the agreement to pay fifty per cent. of the claim was the new obligation. I have very carefully considered the questions here involved without being able to fully concur in the conclusions pronounced by this court in its opinion above cited. My view of the case is as follows :

It is necessary to novation of creditors that, at the time when the agreement is made, the existing creditor shall surrender his claim in consideration of the debtor's agreement to pay that claim to another. I do not perceive how the agreement to pay Rutan can be considered an agreement to pay a new party. When that agreement was made Rutan was assignee of the indebtedness to Lee. He had the legal title to the claim, and consequently Lee had no claim to surrender. The proposition of compromise was made to Rutan, and Rutan was authorized by the court in Brooklyn to accept it. The agreement for compromise was made in the State of New York, where Lee's assignment was good both as to himself and as to all his creditors, whether they were residents or non-residents.

---

---

If, however, the agreement is to be construed as if made in this state, the legal situation is not changed, for here the assignment was also good as between Lee and Rutan and all non-resident creditors of Lee. It was only void as to creditors resident in this state with respect to property located here. *Varnum* v. *Camp, 1 Gr. 326; Garretson* v. *Brown, 2 Dutch. 425; Fairchild* v. *Hunt, 1 McCart. 367; Moore* v. *Bonnell, 2 Vr. 90; Bentley* v. *Whittemore, 4 C. E. Gr. 462; Receiver of State Bank* v. *First National Bank of Plainfield, 7 Stew. Eq. 450; Van Winkle* v. *Armstrong, 14 Stew. Eq. 404; Kimball* v. *Lee, 16 Stew. Eq. 279.* There was no novation as to the creditor. Rutan was the creditor, and he was dealt with.

Now, the agreement as to the claim is stated in one part of the bill to be—

"That Rutan, with other creditors, agreed to authorize him [the receiver] to make a compromise, one part of which was that they, the creditors, should accept fifty per cent. of the amount of their respective claims, as allowed by him, as such receiver, in full thereof, in cash, to be paid before January 5th, 1886."

And in another part of the bill as follows :

"That the agreement of compromise signed by the creditors of the construction company was dated at New York on the thirteenth of July, 1885, and by it they agreed with your orator that they would accept, in full payment and satisfaction of their claims against the construction company and the railway company, on that account, fifty per cent. of the face value thereof as allowed by the receiver, provided notice was given on or before October 1st, 1885, that the same would be paid in cash on or before the fifth of January, 1886."

It is thus very plainly stated that the bargain was for the future acceptance of a sum of money which, when paid, would be full satisfaction of the debt, and that such agreement was to be binding upon the creditors upon a specified notice being given. It was not an agreement to substitute a new undertaking for the existing obligation, but an agreement to compromise the existing obligation by accepting a sum which, if paid by a certain time, would satisfy it. The old debt was not extinguished by the agreement. If the money was not paid as agreed, the whole

debt could be enforced. The thing accepted was not the receiver's agreement to pay Rutan, free from the legal liability and obligation of Lee's estate, for the receiver made no such agreement, but the ascertainment of a sum to be paid that estate, in the performance of a general compromise which the receiver was to endeavor to bring about. The agreement was a compromise, not a novation. The money agreed to be paid in compromise did not have a different legal *status* than that which was due to Lee, or rather to Rutan, his assignee, upon the original claim. It was a portion of that money, to be accepted in satisfaction of the whole of it.

But even if the result of the receiver's negotiation be regarded as a novation, the defendant's silence during the negotiation, with knowledge of its pendency, should not, as the case stands, create an equity against them. The receiver is an arm of this court, with powers which are subject to its control. *Vanderbilt* v. *Central R. R. Co., 16 Stew. Eq. 669.* Before he compromised with Rutan the defendants obtained an order in the very proceedings in which he was appointed, and by which he was controlled, giving them permission to attach the Lee moneys in his hands. With knowledge of this order, and that it stood unrevoked, the receiver concluded his negotiation and, despite the defendants' effort to stop him, paid Rutan. He does not appear to me to be in position to assert that the silence complained of raises an equity in his behalf. If the order giving permission to attach was not acted upon with due promptitude, he should have asked the court to revoke it. While it remained unrevoked it limited his authority, and thus qualified his right of action.

The amount paid in compromise was more than sufficient to satisfy the defendants' judgment. If it had not been sufficient, I think it might be well argued that, as the compromise was part of the means by which assets were secured to the receiver, Lee's right must be regarded as based on it and limited by it, and more especially so, as to the defendants, in view of their silence during the negotiation.

That the defendants fairly but ineffectually endeavored to prevent the payment of the money to Rutan, is conspicuously shown

by their suit for injunction, and the pendency of their appeal warned the receiver to withhold payment from Rutan.

It remains to consider the effect of the defendant's participation in the dividend paid by Rutan. They knew that such dividend was made from the moneys they claimed under their attachment, but they also knew that they could not recover that money from Rutan or stop his distribution of it. It was beyond their power. If they did not present their claims to Rutan and share in the dividend, the moneys would nevertheless be distributed, and other creditors who had presented claims would, through their failure to participate in the distribution, take larger dividends. By taking a dividend, their claim upon the receiver, under their attachment, would be reduced. It would be but equitable and just to the receiver to do what they could to lessen their demand against him. While they accepted the dividend upon their claims, they also pressed both their appeal and their attachment suit.

I fail to perceive how their acceptance of a dividend can be considered as a ratification of, or acquiescence in, the receiver's payment to Rutan. Their whole attitude was antagonistic to acquiescence. The position in which they were placed was forced upon them by the conduct of the receiver, and their action in it, as far as possible for his benefit, should not work to their injury and his advantage.

But it is insisted that the presentation of the defendants' claim to the assignee and acceptance of dividends thereon was an election to recognize the assignment in its full scope, and that, having made such election, the defendant should not now be permitted to prosecute a suit in antagonism to its provisions, which was intended to carry the debtor's entire estate to its assignee. It is to be borne in mind that the validity of the assignment was not questioned, save so far as it affected property in this state to the detriment of creditors resident here. As to property in New York, it was admittedly valid. The defendants were entitled to participate in the distribution of the New York assets, and, also, were entitled, as to assets in this state, to the special protection which the policy of our laws afforded them.

I do not conceive that under the circumstances their acceptance ·of a dividend and retention of the right which 'the law gives them in this state were inconsistent positions.   It is, at all ·events, quite clear that the defendants did not intend to elect an :abandonment of their suit against the complainant.   Their ac- ·ceptance of a dividend operated for his benefit and not to his ;prejudice.

I perceive no equity due to the complainant which will justify the retention of this injunction, and I will therefore dissolve it.

I should add that when the receiver paid the amount of ·the ·compromise with Lee's estate to the assignee of Rutan, the ·exigencies of the general compromise and negotiation in which he was engaged were such that the payment was advantageous :to his trust.   The payment, therefore, must not prejudice him individually.   He has undisposed-of assets in his hands which ⸱may be applied to his complete indemnity.